IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KOJO ASARE KUMI-DARFOUR,<br><br>*Defendant.* | **UNDER SEAL**<br><br>Case No. 1:26-mj-371 |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Stephen Smith, being first duly sworn, depose and state as follows:

## INTRODUCTION

1. This Affidavit is submitted in support of a criminal complaint and a related arrest warrant charging the following three offenses:

1) On or about January 20, 2023, in Prince George County, Virginia, within the Eastern District of Virginia, **KOJO ASARE KUMI-DARFOUR ("KUMI-DARFOUR")**, in violation of 18 U.S.C. § 1001(a)(2), in a matter within the jurisdiction of the executive branch of the Government of the United States, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation, namely stating falsely he had not sold any firearms privately, and representing falsely that he gave as a gift a firearm (to wit: a Glock 26 9mm pistol, bearing serial number AFPG282) to an individual identified for purposes of this Criminal Complaint at "Buyer 1." The statement and representation of **KUMI-DARFOUR** was false because, as **KUMI-DARFOUR** then and there knew, **KUMI-DARFOUR** had conducted private sales of firearms, including a private sale in which Buyer 1 purchased the Glock 26 9mm pistol,

bearing serial number AFPG282 firearm from **KUMI-DARFOUR**.

2) On or about February 17, 2023, in Loudoun County, Virginia, within the Eastern District of Virginia, **KUMI-DARFOUR**, in violation of 18 U.S.C. § 1001(a)(2), in a matter within the jurisdiction of the executive branch of the Government of the United States, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation, namely stating falsely that he gave as a gift a firearm (to wit: a Glock 26 9mm pistol, bearing serial number AFPG282), to another individual, identified for purposes of this Criminal Complaint as "Buyer 1." The statement and representation of **KUMI-DARFOUR** was false because, as **KUMI-DARFOUR** then and there knew, Buyer 1 had purchased that Glock 26 firearm from **KUMI-DARFOUR**.

3) On or about February 17, 2023, in Loudoun County, Virginia, within the Eastern District of Virginia, **KUMI-DARFOUR**, in violation of 18 U.S.C. § 1001(a)(3), in a matter within the jurisdiction of the executive branch of the Government of the United States, did willfully and knowingly use a false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, namely,

i. presenting to Federal Agents a "Virginia Firearm Bill of Sale" document pertaining to a Glock 26 9mm pistol, bearing serial number AFPG282, representing falsely that he had given as a gift the firearm in question to another individual, identified for purposes of this Criminal Complaint at "Buyer 1."

ii. presenting to Federal Agents a "Virginia Firearm Bill of Sale" document pertaining to a Glock 26 9mm pistol, bearing serial number AFPG282, representing falsely that another individual, identified for purposes of this

Criminal Complaint as "Buyer-1," had signed that document on the "Buyer's Signature" line.

## AGENT INTRODUCTION AND BACKGROUND

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since July 27, 2014. As a Senior Special Agent with ATF, I am authorized pursuant to Title 18, United States Code, Section 3051 to execute search warrants and enforce any of the criminal, seizure, or forfeiture provisions of the laws of the United States. Additionally, I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

3. I am currently assigned to the ATF Falls Church Group II Field Office as the Acting Resident Agent in Charge. The ATF Falls Church Group II Field Office is an enforcement group responsible for investigating violent crime, gangs, armed drug trafficking, and other firearm related violations. I was previously assigned to the Washington Field Division's Firearms Trafficking Group where my assignments involved conducting criminal investigations into cases of illegal possession and transfer of firearms.

4. Prior to joining ATF, I served as an Arlington County, Virginia, Police Officer from June 2010 to July 2014. I have received training in the investigation of crimes from the Northern Virginia Criminal Justice Training Academy, the Arlington County Police Department, Arlington County Police SWAT school, ATF National Academy and the Federal Law Enforcement Training Center at Glynco, Georgia. I was a motor officer and a member of the Arlington County Police Department's SWAT team. During this time, in addition to routine patrol

duties, I initiated and participated in criminal investigations involving the apprehension of individuals engaged in unlawful narcotics possession and distribution, unlawful firearms possession and acquisition, fugitive apprehensions and the fraudulent use of and counterfeiting of government documents.

5. The facts in this Affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and law enforcement personnel. This Affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

6. Since approximately 2020, a federal grand jury in the Eastern District of Virginia has been investigating the racketeering activities of the Virginia set of the East Side Rollin 20s Crips, a criminal enterprise operating through the National Capital Region and elsewhere (hereinafter "RTC Enterprise"). The investigation has obtained evidence that RTC Enterprise members and associates have engaged in the trafficking and distribution of illegal narcotics, specifically millions of pressed fentanyl pills within the Eastern District of Virginia and elsewhere. The investigation has also shown that the RTC Enterprise engaged in the distribution of other illegal narcotics to include cocaine, marijuana, methamphetamine, and non-scheduled drugs such as prescription cough syrups. In addition to narcotics distribution, the RTC Enterprise has engaged in other racketeering activities, including, but not limited to, firearms offenses, some of which are in furtherance of narcotics distribution; identity fraud; and acts of violence, including assault, robbery, intimidation of potential witnesses, and murder.

7. On or about May 29, 2025, a federal grand jury returned an indictment in the Eastern District of Virginia, Case No. 1:25-cr-148, charging ten defendants, nine of whom were

RTC Enterprise members or associates, with several charges related to fentanyl trafficking, racketeering conspiracy, murder in aid of racketeering, and firearms offenses, among others. *See United States v. Isair Jared Choy Bethancourt, et al.*, No. 1:25-cr-148 (RDA), ECF No. 1 (E.D. Va. May 29, 2025). As of the writing of this Affidavit, all ten defendants charged in 1:25-cr-148 have pled guilty, two defendants have been sentenced, and the other eight defendants are awaiting sentencing. *See Id.*

8. During the investigation, numerous firearms have been identified and/or seized by law enforcement that have been linked to identified RTC Enterprise members and associates. Several of those firearms were originally purchased by **KUMI-DARFOUR**. Based on the overlap between **KUMI-DARFOUR's** firearms purchases and some of those firearms being subsequent linked to several identified RTC Enterprise members and associates, law enforcement launched an investigation into **KUMI-DARFOUR's** firearms purchasing and distribution practices as part of the larger investigation into the RTC Enterprise. The federal investigation into **KUMI-DARFOUR** was conducted by several federal law enforcement agencies that fall within the executive branch of the Government of the United States, including the ATF and Drug Enforcement Administration ("DEA"), with the assistance of other federal, state and local law enforcement agencies.

**Origins of Investigation into KUMI-DARFOUR**

9. The investigation into **KUMI-DARFOUR** was sparked by the seizure of a Glock 45, 9mm pistol, bearing serial number BTHC497 (hereinafter "**Gun 1**") on or about January 9, 2022. On or about that day, law enforcement officers with the Sumter County Sheriff's Office in Sumter County, South Carolina observed a vehicle traveling south on Interstate 95 at a high rate of speed. The vehicle was pulled over and as law enforcement officers approached the vehicle,

the occupants began making furtive movements. Law enforcement could distinctly smell marijuana as they approached the vehicle.

10. Law enforcement spoke to the driver, who largely could not be understood but did mention that the group was traveling to Miami, Florida from Virginia. The driver also denied that there were weapons in the vehicle. As law enforcement was interacting with the driver, law enforcement officers saw visible marijuana in the vehicle and ordered everyone out of the vehicle. Relevant here, an individual later identified as Jevon Troy Mark ("MARK")[1] was sitting in the back seat immediately behind the driver. Another one of the occupants, an individual later identified as Isair Jared Choy Bethancourt ("CHOY BETHANCOURT")[2] was sitting in the back right passenger seat near the door. When CHOY BETHANCOURT exited the vehicle, law enforcement noticed a Glock pistol magazine near his feet. At that point, the vehicle was searched. Multiple firearms were found in the vehicle, including **Gun 1**, which was located under the driver's seat. Also found in the vehicle was approximately $78,000 in bulk United States currency that CHOY BETHANCOURT claimed ownership of. Additionally law enforcement located approximately 70 grams of marijuana in the vehicle.

11. CHOY BETHANCOURT was identified during the investigation as the leader of the Virginia set of the RTC Enterprise, MARK was identified as an RTC Enterprise associate, and

---

[1] MARK was indicted in 1:25-cr-148, has pled guilty to Conspiracy to Participate in a Racketeering Enterprise and Conspiracy to Distribute 400 Grams or more of fentanyl, has admitted he was an RTC Enterprise Associate and was sentenced to 192 months total incarceration on September 2, 2026. *See* 1:25-cr-148-10.

[2] CHOY BETHANCOURT was indicted in 1:25-cr-148, has pled guilty to Conspiracy to Participate in a Racketeering Enterprise, Conspiracy to Distribute 400 Grams or more of fentanyl, and Murder in Aid of Racketeering Activity, and has admitted he was a member and leader of the Virginia Set of the RTC Enterprise. *See* 1:25-cr-148-1. CHOY BETHANCOURT is awaiting sentencing.

the other two passengers of the vehicle were also identified as RTC Enterprise members or associates. Federal law enforcement officers investigating the RTC Enterprise traveled to Sumter County, South Carolina in January 2022 to take custody of the evidence seized during the January 9, 2022 traffic stop. As the evidence was being catalogued, I conducted a trace of **Gun 1**, which showed that **KUMI-DARFOUR** as the original purchaser. I subsequently obtained purchase records, including but not limited to the ATF Form 4473, related to the purchase of Gun 1. **Gun 1** was purchased by/transferred to **KUMI-DARFOUR** on or about May 10, 2021 from the Army Air Force Exchange ("The Exchange") on the Fort Belvoir United States Army installation located in Fort Belvoir, Virginia, within the Eastern District of Virginia. KUMI-DARFOUR is a member of the Virginia Army National Guard and has been so since approximately May 31, 2018. **KUMI-DARFOUR** had access to The Exchange due to his status within the Virginia Army National Guard.

12. After determining that **KUMI-DARFOUR** was the original purchaser of **Gun 1**, and considering the context in which **Gun 1** was found/seized in possession of RTC Enterprise members and associates, law enforcement began to investigate other firearm purchases made by **KUMI-DARFOUR**.

13. The investigation revealed that **Gun 1** was purchased by/transferred to **KUMI-DARFOUR** on or about May 10, 2021, simultaneously with four other Glock handguns at The Exchange. Law enforcement also discovered several additional purchases of firearms that **KUMI-DARFOUR** made from approximately February 2021 through May 2021, which included one instance in which three additional Glock pistols were simultaneously purchased by/transferred to **KUMI-DARFOUR** at The Exchange on or about May 22, 2021 – only twelve days after **KUMI-DARFOUR**'s purchase of the five Glock pistols on or about May 10, 2021.

14. The table below summarizes the eleven firearms (ten of which are Glock pistols) purchased by **KUMI-DARFOUR** in the time period of approximately February to May 2021 that have been identified by law enforcement,[3] including the approximate date of the purchases, the location of the purchases, and the type of firearm(s) purchased.

| Date of Purchase | Location of Purchase | Type of Firearm Purchased |
|---|---|---|
| February 8, 2021 | The Exchange | Glock 17 Gen 5, 9mm, semi-automatic pistol, bearing serial number BPD5749 |
| March 13, 2021 | The Exchange | Glock 22 Gen 3, .40 caliber, semi-automatic pistol, bearing serial number BRRN647 |
| April 23, 2021 | Legacy Tactical & Arms, Fredericksburg, VA | Century Arms Draco, 9mm, semi-automatic pistol, bearing serial number RON2048474 |
| May 10, 2021 | The Exchange | 1. Glock 17 Gen 5, 9mm, semi-automatic pistol, bearing serial number BTBH344<br>2. Glock 45 MOS, 9mm pistol, bearing serial number BTHC497 **(Gun 1)**<br>3. Glock 45 MOS, 9mm, semi-automatic pistol, bearing serial number BTHC481<br>4. Glock 19 Gen 5, 9mm semi-automatic pistol, bearing serial number BPAB836<br>5. Glock 43, 9mm, semi-automatic pistol bearing serial number AFGN351 |

[3] The government is aware of additional firearms purchases made by **KUMI-DARFOUR** both before and after the time period of February 2021 to May 2021, which are not reflected on the included Table.

| Date of Purchase (cont.) | Location of Purchase (cont.) | Type of Firearm Purchased (cont.) |
|---|---|---|
| May 22, 2021 | The Exchange | 1. Glock 26 Gen 5, 9mm, semi-automatic pistol, bearing serial number AFPG282 (hereinafter "**Gun 2**")<br>2. Glock 23 Gen 3, 9mm, semi-automatic pistol, bearing serial number BSLW438 (hereinafter "**Gun 3**")<br>3. Glock 19 Gen 5, 9mm, semi-automatic pistol, bearing serial number BTDD381 |

15. In my training and experience, I have learned that it is highly unusual for a firearms collector to purchase approximately eleven firearms in a span of approximately three months, and it is also unusual for a firearms collector to purchase two of the exact same model of a firearm at the same time, or very close in time to each other. As shown in the above table, **KUMI-DARFOUR's** three separate purchase dates of firearms on February 28, 2021, May 10, 2021 and May 22, 2021, included three different sets of two identical models of firearms: two identical Glock 17 firearms, two identical Glock 45 MOS firearms, and two identical Glock 19 firearms.

16. During the period of **KUMI-DARFOUR's** purchases, the Commonwealth of Virginia had a prohibition on purchasing more than one handgun/pistol in any 30-day period, with limited exceptions. *See* Va. Code. Ann. § 18.2-308.2:2(R) (2020). One such exception was for individuals who possess a Virginia permit to carry a concealed handgun, often referred to as a Concealed Carry Permit, or "CCP" for short. *See* Va. Code. Ann. § 18.2-308.2:2(R)(2)(h) (2020). Regarding **KUMI-DARFOUR's** May 10, 2021 simultaneous purchase of five Glock handguns, and his May 22, 2021 simultaneous purchase of three additional Glock handguns, the sales records from The Exchange show that **KUMI-DARFOUR** on both dates presented his Virginia Concealed

Carry Permit in order to be permitted by The Exchange to purchase multiple handguns/pistols within a 30-day period.

**Interviews of KUMI-DARFOUR**

17. Based on the frequency of **KUMI-DARFOUR**'s purchases and his frequent use of The Exchange, law enforcement decided to interview **KUMI-DARFOUR** regarding his firearm purchases and practices. Law enforcement conducted two interviews of **KUMI-DARFOUR**, first on or about January 20, 2023 and again on or about February 17, 2023, both occurring within the Eastern District of Virginia. Summaries of those interviews are below. The statements below are not verbatim statements made by **KUMI-DARFOUR** unless otherwise noted.

A. January 20, 2023 Interview

18. On or about January 20, 2023, law enforcement met **KUMI-DARFOUR** at a location in Fort Lee, Virginia, within Prince George Virginia, all within the Eastern District of Virginia. The interview was video and audio recorded. I, along with a DEA Task Force Officer (hereinafter "DEA TFO") showed **KUMI-DARFOUR** our respective law enforcement credentials and informed him of the purpose of the interview was to discuss his firearms purchase history. **KUMI-DARFOUR** was told the interview was voluntary and that he could leave at any time. **KUMI-DARFOUR** agreed to be interviewed. During the interview **KUMI-DARFOUR** was informed by agents that a federal investigation was being conducted and his firearms purchases were part of that investigation.

19. **KUMI-DARFOUR** stated that he purchased firearms because he enjoyed collecting them. He estimated that, at the time of the interview, he thought he had purchased approximately 15 firearms. When asked if he had ever sold any firearms, **KUMI-DARFOUR** stated he had sold several firearms back to various gun stores, referencing licensed firearms

distributors/gun stores who hold a Federal Firearms Licensee, or "FFL" (retailers of firearms or legal gun stores are commonly referred to simply as an "FFL.") **KUMI-DARFOUR** stated he had sold firearms to FFLs including "Herndon Arms" and the "Gun Store." Later investigation showed those statements made by **KUMI-DARFOUR** were untrue. On February 24th, 2023, I contacted Herndon Arms, which is an FFL located at 795 Center Street, Suite 4A, Herndon, Virginia, 20170. I asked the manager to review any firearm purchased from **KUMI-DARFOUR**. There were no results for firearms purchased from **KUMI-DARFOUR** and no results on the serial number of the firearm KUMI-DARFOUR claimed he has sold to "Herndon Arms." Also on that date, I attempted to locate the "Gun Store" FFL that **KUMI-DARFOUR** claimed he had sold firearms to. There were no listed FFLs in the ATF FFL database with the name "The Gun Store" or "Gun Store."

20. After stating that he had sold firearms to FFLs, **KUMI-DARFOUR** was asked by myself "What guns have you sold privately? Like not to an FFL" and in response **KUMI-DARFOUR** stated to myself and DEA TFO "I haven't sold any guys privately." As detailed later in this Affidavit, the investigation has shown that was a false statement.

21. **KUMI-DARFOUR** stated that he had given away four firearms as gifts. **KUMI-DARFOUR** stated that he had a folder where he kept bills of sale and documentation for his firearms, and told investigators he would have to retrieve those at a later date because he believed the documents were located within his car which was being serviced.

22. **KUMI-DARFOUR** was asked if he recalled who he had gifted firearms to. **KUMI-DARFOUR** stated that he had given a firearm to MARK, and stated he gave firearms away to his close friends so they could protect themselves. **KUMI-DARFOUR** stated that MARK's nickname was "J-Drive" and that MARK drives to Florida and elsewhere with "Izzy" and two other individuals whom **KUMI-DARFOUR** also identified by their respective nicknames. Based

on my personal involvement in the RTC Enterprise investigation, I know that "Izzy" is a nickname for CHOY BETHANCOURT a member and leader of the RTC Enterprise, and the other two individuals **KUMI-DARFOUR** identified by nickname are known by law enforcement to be RTC Enterprise members and associates. **KUMI-DARFOUR** stated he was aware that MARK had a desire to be a Crip gang member, but **KUMI-DARFOUR** stated he did not know whether MARK was an actual Crip gang member.

23. **KUMI-DARFOUR** stated that he had additionally given one firearm each to two different friends of his on the same date. **KUMI-DARFOUR** identified those two friends by name. Regarding the first friend identified by **KUMI-DARFOUR**, he stated he gifted a gun to that first friend—Buyer 1—around the time of Buyer 1's birthday. Regarding the second friend identified by **KUMI-DARFOUR**, he stated that he had also gifted a firearm to that second friend (hereinafter "Buyer 2") on that same day.

B. <u>February 17, 2023 Interview</u>

24. At some point after **KUMI-DARFOUR's** interview on or about January 20, 2023, **KUMI-DARFOUR** contacted law enforcement and stated his desire to show law enforcement various bills of sale that **KUMI-DARFOUR** had in his possession related to his claimed gifting of firearms. **KUMI-DARFOUR** met myself and DEA TFO in a parking lot in Ashburn, Virginia, within the Eastern District of Virginia, on or about February 17, 2023.

25. As **KUMI-DARFOUR** had claimed during the January 20, 2021 interview, **KUMI-DARFOUR** again stated that he had gifted guns to Buyer 1 and Buyer 2 on the same date. During the interview **KUMI-DARFOUR** presented five documents entitled "Virginia Firearm Bill of Sale" that **KUMI-DARFOUR** represented were related to firearms that **KUMI-DARFOUR** stated he had provided as gifts to others.

26. **KUMI-DARFOUR** presented me with a "Viginia Firearm Bill of Sale" document for the firearm (**Gun 2**) that **KUMI-DARFOUR** claimed he had gifted to Buyer 1 (hereinafter "Forged Bill of Sale-1"). Forged Bill of Sale-1 is dated August 23, 2021, **Gun 2** is listed as the firearm in question, the "Seller's Name" line is blank but **KUMI-DARFOUR's** name is listed on the Seller's mailing address line, and the "Buyer's Name" lists the first and last name of Buyer 1. A check box was circled next to "Buyer is receiving the Firearm as a Gift." **KUMI-DARFOUR** signed and dated Forged Bill of Sale-1 as the seller on the "Seller's Signature" line and **KUMI-DARFOUR** included his Driver's License Number. Buyer 1 purportedly signed and dated Forged Bill of Sale-1 as the buyer on the "Buyer's Signature" line. During the interview, **KUMI-DARFOUR** acknowledged to law enforcement that he was aware Buyer 1 sold marijuana.

27. **KUMI-DARFOUR** also presented me with another bill of sale dated August 23, 2021 for a firearm (**Gun 3**) **KUMI-DARFOUR** claimed he had gifted to Buyer 2 (hereinafter "Forged Bill of Sale-2"). Forged Bill of Sale-2 is dated August 23, 2021, **Gun 3** is listed as the firearm in question, the "Seller's Name" line is blank but **KUMI-DARFOUR's** name is listed on the Seller's mailing address line, and the "Buyer's Name" is listed as Buyer 2. A check box was circled next to "Buyer is receiving the Firearm as a Gift." **KUMI-DARFOUR** signed and dated Forged Bill of Sale-2 as the seller on the "Seller's Signature" line and **KUMI-DARFOUR** included his Driver's License Number. Buyer 2 purportedly signed and dated Forged Bill of Sale-2 as the buyer on the "Buyer's Signature" line. During the interview, **KUMI-DARFOUR** stated that he knew Buyer 2 wanted a firearm, and claimed he (**KUMI-DARFOUR**) surprised Buyer 2 with **Gun 3** as a gift on or about August 23, 2021, and **KUMI-DARFOUR** also stated he gave Buyer 1 **Gun 2** as a gift on the same date.

28. **KUMI-DARFOUR** did not produce to law enforcement any bill of sale related to

the firearm **KUMI-DARFOUR** claimed he had gifted to MARK (**Gun 1**), and **KUMI-DARFOUR** stated he never completed a bill of sale related to giving MARK the firearm. **KUMI-DARFOUR** stated that he believed he gifted a Glock 45 to MARK around MARK's birthday, which **KUMI-DARFOUR** believed was in September.[4] During the interview, **KUMI-DARFOUR** stated he gave the gun to MARK because he knew MARK was traveling across the country with "them" (a reference to RTC Enterprise members and associates) and **KUMI-DARFOUR** stated he was told by Buyer 2 that MARK had asked to be down with (meaning to join) the Rollin 20s (a reference to the RTC Enterprise).

29. Law enforcement showed **KUMI-DARFOUR** information about his simultaneous purchase of five firearms from The Exchange on or about May 10, 2021, and asked **KUMI-DARFOUR** why he purchased five different 9mm Glock pistols, and why two of the five were the exact same pistol (referencing the two Glock 45 MOS models that were purchased, one of which was **Gun 1**). **KUMI-DARFOUR** stated he had a military credit card so the purchases were not money out of his pocket. **KUMI-DARFOUR** stated his goal was to customize each firearm with different triggers, slides, and other accessories.

30. **KUMI-DARFOUR** further stated during the interview that he had given three of the five firearms he purchased on May 10, 2021 from The Exchange to a third individual around August of 2021. **KUMI-DARFOUR** stated he gave the three firearms to that third individual to store in a safe. **KUMI-DARFOUR** presented me with three different "Virginia Firearm Bill of

[4] MARK's birthday is in the month of September. Based on the time of **Gun 1**'s purchase (May 2021) and the time of the seizure of **Gun 1** (January 2022), **KUMI-DARFOUR** was likely referring to allegedly gifting a firearm to MARK for MARK's September 2021 birthday. Furthermore, **KUMI-DARFOUR** stated during the January 20, 2023, interview that he believed he gave away a Glock Model 45 that he purchased on May 10, 2021 away in September of 2021 as a birthday present. As previously noted, **Gun 1** is a Glock Model 45, and was purchased by KUMI-DARFOUR on May 10, 2021.

Sale" documents **KUMI-DARFOUR** claimed were related to those three firearms. However, all three of those purported bills of sale were incompletely filled out, and none of them had the check boxes filled out and/or circled to indicate if the firearms had been sold, gifted or traded.

**Further Investigation into KUMI-DARFOUR's Firearms Sales**

31. As the investigation into the broader RTC Enterprise continued, law enforcement learned more information about **KUMI-DARFOUR's** firearms practices. Contrary to **KUMI-DARFOUR's** statements to federal law enforcement officers, law enforcement learned that **KUMI-DARFOUR** had actually sold firearms to various private individuals, which include at least three private sales of firearms to identified individuals: MARK, Buyer 1, and Buyer 2.

32. First, as part of the RTC Enterprise investigation, a RTC Enterprise member (hereinafter "CC-1") was prosecuted for various RTC Enterprise and narcotics-related activities.[5] CC-1 knew **KUMI-DARFOUR** as one of several individuals who RTC Enterprise members and associates could buy firearms from. CC-1 stated that **KUMI-DARFOUR** did not purchase firearms explicitly for RTC Enterprise members and associates, but rather that RTC Enterprise members and associates would purchase firearms from **KUMI-DARFOUR** that **KUMI-DARFOUR** already owned. CC-1 stated that MARK once told CC-1 that MARK was planning to purchase a firearm from **KUMI-DARFOUR**. CC-1 later learned from MARK that MARK had purchased a firearm from **KUMI-DARFOUR**. CC-1 believed that the firearm MARK stated he purchased from **KUMI-DARFOUR** had a green laser sight on it.

[5] CC-1 is a cooperating defendant who has previously pled guilty to federal narcotics and firearms offenses. CC-1 is cooperating with law enforcement in hopes of a reduction in sentence. Information provided by CC-1, both relevant to **KUMI-DARFOUR** and others, has been proven reliable and has been corroborated by other sources. There is no indication or information available to investigators at this time that CC-1 is providing false information regarding the investigation. Therefore, I deem CC-1's information to be reliable and credible.

33. Second, as previously noted in this Affidavit, MARK has been prosecuted for various RTC Enterprise and narcotics-related activities in this Court.[6] As part of his plea agreement, MARK agreed in his sworn Statement of Facts that he was in the vehicle stopped by the Sumter County Sheriff's Office on January 9, 2022 in which **Gun 1** was recovered, as detailed above in paragraphs 9-11. MARK also agreed that he possessed **Gun 1** during and in furtherance of the RTC Enterprise's drug trafficking activities. Importantly with regard to **KUMI-DARFOUR**, MARK agreed that **Gun 1** had been purchased for him by another RTC Enterprise member or associate at a federal firearms licensee retail store in Fort Belvoir, Virginia, a reference to The Exchange. As noted above, **KUMI-DARFOUR** was the individual who purchased **Gun 1** from The Exchange located in Fort Belvoir, Virginia.

34. Finally, Buyer 1 was prosecuted for various federal offenses.[7] Buyer 1 spoke with law enforcement about **KUMI-DARFOUR** and how Buyer 1 came into possession of **Gun 2**. Buyer 1 stated he has known **KUMI-DARFOUR** for many years. Buyer 1 stated that he, **KUMI-DARFOUR**, MARK, Buyer 2, and one other person ("Individual 1") were in a group chat where **KUMI-DARFOUR** advertised firearms for purchase to the other individuals in the group chat. Buyer 1 informed that **KUMI-DARFOUR** stated that **KUMI-DARFOUR** was able to get good deals on the firearms because of his membership in the military. Buyer 1 further informed that **KUMI-DARFOUR** also stated his membership in the military allowed him to buy multiple

---

[6] *See United States v. Bethancourt et al*, 1:25-cr-148-10, ECF Nos. 163, 64 (E.D. Va. Apr. 29, 2026) (detailing MARK's Plea Agreement and Statement of Facts).

[7] Buyer 1 has previously pled guilty to federal offenses. Buyer 1 is cooperating with law enforcement in hopes of a reduction in sentence. Information provided by Buyer 1, both relevant to **KUMI-DARFOUR** and others, has been proven reliable and has been corroborated by other sources. There is no indication or information available to investigators at this time that Buyer 1 is providing false information regarding the investigation. Therefore, I deem Buyer 1's information to be reliable and credible.

firearms at a time, unlike civilians.

35. Buyer 1 stated that **KUMI-DARFOUR** sent a screen record video of a website that had guns for sale to the group chat, and Buyer one chose the Glock 26 from that video and told **KUMI-DARFOUR** that was the gun he wanted. Buyer 1 stated that within a few weeks of requesting that firearm, **KUMI-DARFOUR** brought **Gun 2** to Buyer 1, and Buyer 1 paid money to **KUMI-DARFOUR** in exchange for **Gun 2**. Buyer 1 stated that **Gun 2** was listed for $400 online in the video that **KUMI-DARFOUR** had sent to the group chat, and Buyer 1 purchased **Gun 2** directly from **KUMI-DARFOUR** for approximately $600.

36. Buyer 1 was shown a photo of a Glock firearm located from Buyer 1's phone, and Buyer 1 identified it as the firearm Buyer 1 purchased from **KUMI-DARFOUR (Gun 2)**. Buyer 1 stated that he believed he signed a piece of paper **KUMI-DARFOUR** produced during the purchase.

37. Buyer 1 was then shown Forged Bill of Sale-1 related to **Gun 3** that **KUMI-DARFOUR** had provided to law enforcement during the interview conducted on or about February 17, 2023, and which **KUMI-DARFOUR** claimed he and Buyer 1 had signed. Forged Bill of Sale-1 includes a signature of Buyer 1's name. Buyer 1 reviewed that document and stated the "Buyer's Signature" on Forged Bill of Sale-1 was not his signature, and Buyer 1 stated he does not sign his name in the manner that Buyer-1's forged signature appeared. Law enforcement was able to review other documentation Buyer 1 has previously signed and confirmed Buyer 1's practice of not signing his signature in the manner that Buyer-1's forged signature appeared on Forged Bill of Sale-1. Buyer 1 further stated the circled box on Forged Bill of Sale-1 stating **Gun 2** was gifted to Buyer 1 was not accurate, because Buyer 1 had purchased **Gun 2** from **KUMI-DARFOUR**.

38. Buyer 1 stated that everyone in the group chat mentioned in paragraphs 34-35 bragged about purchasing firearms from **KUMI-DARFOUR**. Buyer 1 stated that MARK purchased a Glock firearm from **KUMI-DARFOUR** at some point. Buyer 1 stated that Buyer 2 had also purchased a gun (referencing **Gun 3**) from **KUMI-DARFOUR** – directly contradicting **KUMI-DARFOUR's** statements to federal law enforcement agents that **KUMI-DARFOUR** had never conducted a private sale of a firearm.

39. Buyer 1 told investigators that at some point **KUMI-DARFOUR** contacted Buyer 1 about law enforcement interest in firearms purchased by **KUMI-DARFOUR**. **KUMI-DARFOUR** asked Buyer 1 to return **Gun 2** to **KUMI-DARFOUR**, but **KUMI-DARFOUR** refused to refund Buyer 1 the money he paid for the purchase of **Gun 2**.

**Probable Cause Exists that KUMI-DARFOUR Lied to, and Produced Fraudulent Documents to, Federal Law Enforcement Officers Concerning a Federal Investigation**

40. The evidence shows there is probable cause to believe that, during his interview with federal law enforcement officers on or about January 20, 2023, KUMI-DARFOUR lied to federal law enforcement officers when **KUMI-DARFOUR** stated to myself and DEA TFO that he had not sold any firearms privately, when in fact KUMI-DARFOUR had conducted multiple private sales of firearms, including but not limited to a private sale to Buyer 1.

41. The evidence further shows there is probable cause to believe that, during his interview with federal law enforcement on or about February 17, 2023, **KUMI-DARFOUR** lied to federal law enforcement officers when **KUMI-DARFOUR** stated to myself and a DEA TFO that he gave **Gun 2** as a gift to Buyer 1, when in fact he had sold **Gun 2** to Buyer 1.

42. The evidence further shows there is probable cause to believe that during that February 17, 2023 interview in which **KUMI-DARFOUR** lied to federal law enforcement officers, **KUMI-DARFOUR** in furtherance of that lie provided a fraudulent/forged bill of sale

(Forged Bill of Sale-1) to myself and DEA TFO that contained materially false statements and representations related **Gun 2**.

## CONCLUSION

43. I submit there is probable cause to believe that, on or about January 20, 2023, in Prince George County, Virginia, within the Eastern District of Virginia, **KUMI-DARFOUR**, in violation of 18 U.S.C. § 1001(a)(2), in a matter within the jurisdiction of the executive branch of the Government of the United States, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation, namely stating falsely he had not sold any firearms privately, and representing falsely that he gave as a gift a firearm (to wit: a Glock 26 9mm pistol, bearing serial number AFPG282) to an individual identified for purposes of this Criminal Complaint at "Buyer 1." The statement and representation of **KUMI-DARFOUR** was false because, as **KUMI-DARFOUR** then and there knew, **KUMI-DARFOUR** had conducted private sales of firearms, including a private sale in which Buyer 1 purchased the Glock 26 9mm pistol, bearing serial number AFPG282 firearm from **KUMI-DARFOUR**.

44. Additionally, I further submit there is probable cause to believe that, on or about February 17, 2023, in Loudoun County, Virginia, within the Eastern District of Virginia, **KUMI-DARFOUR**, in violation of 18 U.S.C. § 1001(a)(2), in a matter within the jurisdiction of the executive branch of the Government of the United States, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation, namely stating falsely that he gave as a gift a firearm (to wit: a Glock 26 9mm pistol, bearing serial number AFPG282), to another individual, identified for purposes of this Criminal Complaint as "Buyer 1." The statement and representation of **KUMI-DARFOUR** was false because, as **KUMI-DARFOUR** then and there knew, Buyer 1 had purchased that Glock 26 firearm from **KUMI-DARFOUR**.

45. Finally, I submit there is probable cause to believe that on or about February 17, 2023, in Loudoun County, Virginia, within the Eastern District of Virginia, **KUMI-DARFOUR**, in violation of 18 U.S.C. § 1001(a)(3), in a matter within the jurisdiction of the executive branch of the Government of the United States, did willfully and knowingly use a false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, namely,

i. presenting to Federal Agents a "Virginia Firearm Bill of Sale" document pertaining to a Glock 26 9mm pistol, bearing serial number AFPG282, representing falsely that he had given as a gift the firearm in question to another individual, identified for purposes of this Criminal Complaint at "Buyer 1."

ii. presenting to Federal Agents a "Virginia Firearm Bill of Sale" document pertaining to a Glock 26 9mm pistol, bearing serial number AFPG282, representing falsely that another individual, identified for purposes of this Criminal Complaint as "Buyer 1," had signed that document on the "Buyer's Signature" line.

Respectfully submitted,

Stephen Smith

Stephen Smith
Senior Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Attested to in accordance with the requirements of
Fed. R. Crim. P. 4.1 via telephone on September 24, 2026:

Hon. William E. Fitzpatrick
United States Magistrate Judge
Eastern District of Virginia